[No. 34498.   Department Two.   October 30, 1958.]

WENZLER & WARD PLUMBING & HEATING COMPANY, INC., *Respondent, v.* JOHN H. SELLEN, JR. *et al., Appellants.*[1]

[1]Reported in 330 P. (2d) 1068.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for appellants.

*H. A. Martin,* for respondent.

FOSTER, J.—Respondent, plaintiff below, a subcontractor, sued appellants, defendants below, the prime contractors, for a balance claimed under its subcontract for mechanical and plumbing work on the preflight facilities at Boeing field, Seattle, Washington. Appellants cross-complained under the same contract. The court allowed some items on the defendants' cross-complaint but awarded respondent a judgment against appellants in excess of $11,000, from which they appeal. Respondent does not cross-appeal.

Four errors are assigned, the two most important being the rejection of appellants' claims for denying the items in their cross-complaint for "as built" drawings amounting to $1,582.56, and compaction of trenches in the sum of $1,980. The "as built" drawings show the exact location of underground installations, and are required by the owner for maintenance and upkeep. The contract required the respondent to furnish the drawings, but it did not do so, whereupon appellants did and cross-complained for the cost thereof. Appellants made such drawings not only for the respondent, but for other subcontractors as well, and have the total costs thereof, but appellants did not keep separate accounts of such work for each subcontractor. An engineer testified that he could estimate, within ten per cent of accuracy, the time spent for this purpose, which he testified came to $1,582.56.

The court unequivocally found that the respondent had the contractual obligation to furnish such drawings, but that nothing could be allowed on account thereof because

no separate cost record was kept by the appellants. The finding is set out in the margin.[2]

The issue of compacting dirt in the trenches is much the same. The respondent was under a contractual duty to do such work and did not do so. Appellants then hired it done as they had for other subcontractors. The testimony showed the total cost and the respondent's proportionate part thereof.

The court found that some of this work was properly chargeable against respondent, but it was unable to find such proportionate sum or a reasonable cost basis. Finding of fact No. 7 is set out in the margin.[3]

Such is a summary of the circumstances respecting both items. The fact of damage was established beyond cavil, but the dollar amount thereof was not proved with mathematical precision. Therefore, the trial court decided the respondent should be immunized from all liability.

Uncertainty as to the fact of damage is ground for denying liability, but the fact of damage being removed from the field of controversy by uncontradicted proof, immunization of the party responsible does not result from uncertainty as to the dollar amount of the damage.

The controlling rule of law was summarized by the United States supreme court in the following passage from its opinion in *Bigelow v. RKO Radio Pictures, Inc.*, 327 U. S. 251, 90 L. Ed. 652, 66 S. Ct. 574, a private triple-damage action under the antitrust laws:

---

[2]"That the defendants also make claim against the plaintiff in the amount of $1,582.56 for as-built drawings, and the Court finds that under the contract the plaintiff was required to furnish its own portion of the as-built drawings, but finds that there was no reliable record kept of the portion of the as-built drawings attributable to the plaintiff separate from the others, and that there is no basis upon which the Court could make an allowance to the defendant from the plaintiff on account thereof." Finding of Fact No. 8.

[3]"That the defendants made claim against the plaintiff for the sum of $1,980.00 for compaction of trenches, and the Court finds that some of this work was caused or made necessary by the performance of the plaintiff, but is unable to find either as to the proportion thereof properly attributable to the plaintiff or a reasonable cost or basis upon which a charge could be made." Finding of Fact No. 7.

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . .

" 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights. . . ."

Our cases are in accord. In one of them, *Kramer v. Portland-Seattle Auto Freight*, 43 Wn. (2d) 386, 261 P. (2d) 692, a wrongful death action, the court quoted with approval from *Bigelow v. RKO Radio Pictures, Inc., supra*. Other cases are collected in the margin.[4] In *Sund v. Keating*, 43 Wn. (2d) 36, 259 P. (2d) 1113, the court reviewed the situation in these words:

"As to appellants' claim that damages here are speculative and conjectural, it seems sufficient to cite our recent decisions in *Gaasland Company v. Hyak Lumber & Millwork*, 42 Wn. (2d) 705, 257 P. (2d) 784; *Dunseath v. Hallauer*, 41 Wn. (2d) 895, 253 P. (2d) 408, wherein we pointed out that while uncertainty as to the *fact of damage* is fatal; nevertheless, uncertainty as to *the amount* or *quantum* of damages is not to be regarded, similarly, as fatal to a litigant's right to recover damages. . . ."

The rule is applicable to a great variety of situations, 25 C. J. S. 493, § 28; 15 Am. Jur. 414, § 23; specifically, *Allen v. Gardner*, 126 Cal. App. (2d) 335, 272 P. (2d) 99 (1954), applied it in an action for the breach of a construction contract. It is most concisely stated in 14 Cal. Jur. (2d) 690, § 65:

"A party who has breached a contract or committed a tortious act is generally not permitted to escape his liability

---

[4]*Ball v. Stokely Foods*, 37 Wn. (2d) 79, 221 P. (2d) 832; *Park v. Northport Smelting & Refining Co.*, 47 Wash. 597, 92 Pac. 442; *Milton v. Hudson Sales Corp.*, 152 Cal. App. (2d) 418, 313 P. (2d) 936; *Conley v. Amalgamated Sugar Co.*, 74 Idaho 416, 263 P. (2d) 705; *Carlson v. Steiner*, 189 Ore. 255, 220 P. (2d) 100; *Skimin v. Fuelgas Co.*, 339 Mich. 523, 64 N. W. (2d) 666; *Willmar Gas Co. v. Duininck*, 236 Minn. 499, 53 N. W. (2d) 225; *Nat. Labor Relations Board v. Kartarik, Inc.*, 227 F. (2d) 190; *Abraham v. Gendlin,* 172 F. (2d) 881; Annotation, 78 A. L. R. 858; *Flagg v. Andrew Williams Stores*, 127 Cal. App. (2d) 165, 273 P. (2d) 294; *Bouchard v. Cole*, 143 Cal. App. (2d) 93, 299 P. (2d) 697.

in damages therefor simply by reason of difficulty in the ascertainment of the damage to the plaintiff. Therefore, when it is clearly apparent that the plaintiff has sustained actual damage from the defendant's wrong, a liberal rule is applied with respect to determining the amount of that damage. Moreover, where proof of actual damage to the plaintiff is available, uncertainty as to the exact amount thereof cannot deny to the plaintiff a right to recover any compensation at all. This rule applies both to a loss of profits by the plaintiff and to items of expense incurred by him as a result of his wrongful discharge from employment."

For a comparison with the English law, see 11 Halsbury's Laws of England (3d ed.) 226, § 394.[5]

█ Respondent contracted to provide the "as built" drawings and to compact the trenches and, of course, took these items into account in making its bid, and was presumably paid therefor. It offered no evidence that the amount of the appellants' damage computed by their witnesses was erroneous. There was substantial evidence of the amount of appellants' damage, and the court manifestly erred in denying appellants any recovery for the two items.

Error is assigned upon the allowance for extras amount-

---

[5] "The fact that damages are difficult to estimate and cannot be assessed with certainty or precision does not relieve the wrongdoer of the necessity of paying damages for his breach of duty, and is no ground for awarding only nominal damages. A distinction must be drawn, however, between cases where the difficulties are due to uncertainty as to the causation of damage, where questions of remoteness arise, and cases where they are due to the fact that the assessment of damages cannot be made with any mathematical accuracy. Lack of relevant evidence may make it impossible to assess damages at all, as where the extent of the loss is dependent upon too many contingencies, and in such cases, where liability is established, nominal damages only may be awarded. Where it is established, however, that damage has been incurred for which a defendant should be held liable the plaintiff may be accorded the benefit of every reasonable presumption as to the loss suffered. Thus the court, or a jury, doing the best that can be done with insufficient material, may have to form conclusions on matters on which there is no evidence, and to make allowance for contingencies even to the extent of making a pure guess; this is of common occurrence in claims made, for example, in respect of pain and suffering, loss of expectation of life, and the loss of a chance of winning a prize."

ing to $2,054.42, plus fifteen per cent, or $308.14, for overhead, a total of $2,362.56.

The contract provided that the subcontractor would make no claim for extras unless agreed upon in writing in advance. Elsewhere in the contract it is provided that failure to give such advance notice shall be a waiver of extra compensation.

■ While the court made no finding upon this issue, the trial judge did state in his oral opinion that such contract requirement of advance written approval had been abandoned. However, the record is barren of any evidence thereof. In fact, no claim for extra compensation was made until long after the work had been completed. The contract provisions respecting extra compensation govern, and it follows that appellants' assignment of error to finding No. 4 making such allowances must be sustained.

However, there was evidence which the trial court accepted, that the well point system was destroyed by appellants' crew after it had been installed by respondent, who was obliged to replace it at a cost of $254.25. The same is true of the cost incurred by respondent in consequence of the appellants' crew wrongfully removing a dike from a manhole cover erected by respondent to prevent water from interfering with its work. This item amounts to $329.17.

■ While appellants offered evidence to the contrary, only a dispute of fact was presented to the trial court. It could have believed either version. The inherent function of the superior court is to decide factual disputes; the function of this court is appellate only. The appellate function begins and ends with a determination of whether the findings are supported by substantial evidence. Under such circumstances, we are not to substitute our judgment for that of the trial court, even though we may believe an erroneous conclusion was reached. *Fischler v. Nicklin,* 51 Wn. (2d) 518, 319 P. (2d) 1098.

Respondent is entitled to recover the two items, $254.25 and $329.17, plus fifteen per cent for overhead.

■ The final assignment of error is the failure of the court to allow appellants a back charge of $474.60 for a

meter box cover. The contract required respondent to furnish it. Appellants made demand upon respondent to do so, and, upon its refusal, appellants supplied it at a cost of $474.60. The trial court was of the opinion, although it made no findings, that such was not required by the contract, but the contract itself provides otherwise.[6] Respondent contends that there was a subsequent oral modification, but there was no corresponding reduction in the subcontractor's compensation. Respondent was paid for it and the back charge is proper. This assignment of error must be sustained.

The judgment is reversed and remanded with instructions to proceed in accordance with the views herein expressed.

HILL, C. J., DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

---

[6] "Meter box shall be provided, constructed with 8" thick concrete walls, 5½ sack mix concrete, inside size sufficient to house the domestic water meter and shutoff valve and the sprinkler detector check and by-pass meters. . . . " Plaintiff's Exhibit No. 8, division M-15 (G).

January 15, 1959. Petition for rehearing denied.