FILED
COURT OF APPEALS
DIVISION II

2015 APR 14 AM 9:49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 1384, | No. 45687-7-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| KITSAP TRANSIT and the PUBLIC EMPLOYMENT RELATIONS COMMISSION, | |
| Respondents. | |

BJORGEN, A.C.J. — The Amalgamated Transit Union, Local 1384 (ATU) appeals superior court orders (1) denying its motion to supplement the record in its appeal of a decision and order by the Public Employment Relations Commission (Commission) and (2) affirming the Commission's order. The Commission's order found that Kitsap Transit had committed two unfair labor practices related to the loss of one of the two health insurance options ATU's members had obtained through collective bargaining with Kitsap Transit, but ordered remedial measures that ATU contends were legally inadequate.

On appeal, ATU contends that (1) the superior court abused its discretion when it declined either to receive new evidence when considering ATU's petition for review or to remand the matter back to the Commission for further fact finding, (2) the Commission acted arbitrarily and capriciously and made factual findings unsupported by the record when determining that Kitsap Transit could not comply with an order requiring it to restore the lost health insurance option, and (3) the Commission erroneously interpreted or applied the provisions of chapter 41.56 RCW and acted arbitrarily and capriciously when it (a) declined to order Kitsap Transit to restore the lost

health insurance option and (b) failed to order Kitsap Transit to pay monetary damages sufficient to make ATU's members whole for the loss of the health insurance option.

We hold that the superior court erred when it denied ATU's motion to remand the matter back to the Commission for further fact finding. We hold also that the Commission erroneously interpreted and applied the provisions of chapter 41.56 RCW when it declined to order Kitsap Transit to make ATU's members whole for the damages inflicted by its unfair labor practices and that the superior court therefore erred in upholding that commission action. Consequently, we reverse the superior court's decision upholding the Commission's order and remand this matter to the Commission for further proceedings consistent with this opinion.

## FACTS

ATU and Kitsap Transit agreed to the collective bargaining agreements relevant to this appeal in 2004 and 2005. Under these agreements and past practice between the parties, Kitsap Transit provided ATU's members with two health insurance options. One was a preferred provider organization (PPO) plan offered by Premera Blue Cross. The second was a health maintenance organization (HMO) plan provided by Group Health. The HMO plan resulted in less out-of-pocket expense for ATU's members, but the PPO plan offered them a broader, national network of physicians and allowed enrolled workers to see a specialist without first obtaining a referral from a primary care physician.

In 2007 and 2008, the collective bargaining agreements between ATU and Kitsap Transit expired. ATU and Kitsap Transit tried and failed to negotiate successor agreements, eventually bargaining to an impasse. Because ATU's members were eligible for interest arbitration under state law, RCW 41.56.492, that impasse triggered mandatory arbitration proceedings. RCW 41.56.450.

State law also froze the terms of employment of ATU members during the pendency of the arbitration, preventing both ATU and Kitsap Transit from unilaterally changing the "existing wages, hours, and other conditions of employment." RCW 41.56.470. Because the Commission's precedent "has long recognized that health insurance benefits are a form of wages," *Yakima County Law Enforcement Guild v. Yakima County*, No. 19234-U-05-4887, 2006 WL 1547092, at *1 (Wash. Pub. Emp't Relations Comm'n June 2, 2006), RCW 41.56.470 prevented Kitsap Transit from unilaterally altering the health insurance options available to ATU's members without either successfully bargaining to do so or receiving an arbitrator's award.[1]

By 2010 Kitsap Transit was experiencing budget shortfalls and facing service cuts. Its director of human resources, Jeff Cartwright, began looking for potential cost savings to alleviate these financial pressures. Cartwright determined that, although roughly equal numbers of ATU's members chose the PPO and HMO options, the PPO option cost Kitsap Transit over a million dollars more a year. Cartwright asked Kitsap Transit's insurance broker to look for a cheaper PPO option.

Cartwright then took the step that ultimately caused Premera to refuse to continue covering ATU's members with the PPO plan. Cartwright offered incentives to PPO members to abandon the plan, even though the insurance broker warned that decreasing the number of Kitsap Transit workers covered by Premera could make the pool of insured workers so small as to make coverage uneconomical for Premera. Eventually, as the broker had warned, so few of Kitsap Transit's employees chose PPO coverage that Premera withdrew its bid to continue PPO coverage for ATU's members in 2011.

---

[1] ATU did have some flexibility in choosing a provider other than Premera, so long as the level of benefits remained unchanged.

The search by Kitsap Transit's insurance broker for other, comparable PPO coverage proved futile. Consequently, ATU members lost the ability to choose PPO coverage for 2011, and all ATU members received HMO coverage.

ATU responded by filing a complaint with the Commission alleging, among other things, that Kitsap Transit had violated RCW 41.56.140(4) by refusing to engage in collective bargaining with it by unilaterally taking the steps resulting in the elimination of the PPO coverage.

The parties contested ATU's allegations before one of the Commission's hearing examiners. Ultimately, the examiner determined that Kitsap Transit had refused to bargain with ATU when it caused the loss of PPO coverage for ATU's members.

The examiner, in her remedial order, required Kitsap Transit to cease and desist its unlawful labor practices and to take affirmative action "to effectuate the purposes and policies of Chapter 41.56 RCW." Administrative Record (AR) at 1905. Among these affirmative acts, the examiner ordered Kitsap Transit to:

> [2]a. Restore the status quo ante by reinstating a health insurance plan with benefit levels substantially equivalent to the December 31, 2010 Premera PPO plan or implementing another plan option as agreed upon by the union.
>
> [2]b. Make bargaining unit employees who were on the Premera PPO plan in 2010 or who documented their desire to switch to the Premera PPO plan in 2011 whole by paying these employees the premium savings (difference in cost of the 2011 Premera and Group Health plans, minus employee contribution rates as described in the collective bargaining agreement), plus interest, from the time the employer terminated the Premera PPO plan on January 1, 2011, until the time that the employer either: 1) restores a comparable PPO plan option, 2) reaches a negotiated agreement with the union on health benefit plans, or 3) implements health benefits as determined by an interest arbitration award.

AR at 1905-06 (emphasis omitted).

Kitsap Transit appealed to the Commission, arguing that the examiner had erred by finding it had committed the unfair labor practice, by rejecting its excusal defense, and by ordering

4

monetary remedies that amounted to an impermissible windfall for ATU's members. The Commission rejected Kitsap Transit's first two claims and affirmed the examiner's conclusion that Kitsap Transit had committed unfair labor practices. However, the Commission determined that compliance with the examiner's order to reinstate the PPO coverage could prove impossible and agreed with Kitsap Transit that the examiner's monetary remedies were punitive. Accordingly, the Commission adopted the examiner's findings of fact, conclusions of law, and order, but modified the remedies section set out above so that

I. Paragraph 2 a. is stricken.
II. Paragraph 2 b. is modified as follows:
b. Make bargaining unit employees who were formerly covered under the Premera PPO plan whole for their losses incurred as a result of the employer's unilateral elimination of the Premera PPO plan. The employer shall reimburse the employees the difference between what would have been paid under the Premera PPO plan less any payments made under the HMO plan for all medical expenses. We order the employer to make these reimbursements from the date the employer unilaterally stopped offering the PPO plan until the parties negotiate, and implement, a good faith agreement or obtain, and implement, an award from an interest arbitrator on health insurance coverage.

AR at 1986.

ATU petitioned the superior court for review of the Commission's order, contending that the Commission erroneously interpreted or applied the law, acted arbitrarily and capriciously, and made factual findings unsupported by substantial evidence. To remedy these errors, ATU sought reinstatement of the examiner's remedial order.

In conjunction with its appeal of the Commission's order, ATU moved in the superior court to supplement the record with additional evidence, either through its admission in superior court or through a remand to the Commission for further fact finding. ATU's evidence showed that, subsequent to the examiner's decision but before the Commission's, Cartwright informed it that he had located a health plan he considered comparable to the lost PPO coverage. After the Commission's decision, Kitsap Transit made the coverage available to ATU's members, with

5

ATU's assent. Eventually ATU's bargaining units ratified new collective bargaining agreements that allowed ATU's members to choose the new PPO-like coverage or the HMO coverage. ATU contended in superior court that this evidence showed the Commission had erred in finding that it might be impossible for Kitsap Transit to restore the lost PPO coverage or its substantial equivalent.

The trial court denied ATU's motion to supplement the record and affirmed the Commission's order. ATU appealed.

ANALYSIS

On appeal, ATU claims that the superior court erred in (1) denying ATU's motion to supplement the record, (2) determining that compliance with an order to restore PPO coverage was impossible, and (3) striking the examiner's order requiring Kitsap Transit to restore substantially equivalent PPO coverage and pay affected ATU members damages based on its premium savings.

We agree that the superior court's decision not to remand this matter to the Commission with orders to perform further fact finding was erroneous and that the Commission's remedies were an erroneous application of RCW 41.56.160(2). Accordingly, we vacate the Commission's order and remand this matter back to the Commission for further proceedings consistent with this opinion.[2]

---

[2] Our disposition of ATU's appeal on these grounds makes it unnecessary to reach the remainder of ATU's claims.

6

## I. STANDARD OF REVIEW

We review a trial court's denial of a motion to supplement the record for an abuse of discretion. *Samson v. City of Bainbridge Island*, 149 Wn. App. 33, 65, 202 P.3d 334 (2009). "A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011).

We review a commission order "under the standards prescribed by the [Administrative Procedures Act, chapter 34.05 RCW (APA)]," *City of Vancouver v. Pub. Emp't Relations Comm'n*, 180 Wn. App. 333, 347, 325 P.3d 213 (2014), applying those standards directly to the record before the agency. *City of Federal Way v. Pub. Emp't Relations Comm'n*, 93 Wn. App. 509, 511, 970 P.2d 752 (1998). Under the APA we may grant relief from an agency order for any one of the nine reasons set out in RCW 34.05.570(3). Of these, the one relevant to our disposition of ATU's appeal is its claim that the Commission erroneously interpreted or applied the law. As the party challenging the Commission's order, ATU bears the "burden of demonstrating [its] invalidity." RCW 34.05.570(1)(a).

We review de novo claims that the Commission erroneously interpreted or applied the law. *City of Vancouver*, 180 Wn. App. at 347. We review the Commission's interpretation of the provisions of chapter 41.56 RCW under the error of law standard. *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 409, 97 P.3d 17 (2004). Under this standard, we "may substitute our interpretation of the law for the Commission's, although we give the Commission's interpretation of chapter 41.56 RCW great weight and substantial deference" because of the expertise the Commission has developed administering the chapter. *City of Vancouver*, 180 Wn. App. at 347.

7

## II. MOTION TO SUPPLEMENT THE RECORD

The APA permits supplementation of an administrative record in two ways: through a trial court's acceptance of new evidence or a trial court's order remanding a matter back to the agency for further fact finding. RCW 34.05.562(1), (2). ATU contends that the trial court abused its discretion by denying its motion to supplement the record through either of these means. We agree as to the second means; the trial court abused its discretion by denying the motion to remand for further fact finding.

> As relevant, a court may receive new evidence on appeal of an administrative decision
>
> only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding . . . [m]aterial facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record.

RCW 34.05.562(1)(c). ATU's evidence did not satisfy these criteria. The Commission's order resulted from a full adjudicatory proceeding, which required a decision based on the record, RCW 34.05.476(3), *see* WAC 391-45-001, not from the type of proceeding that permits a court to receive new evidence during review of the agency's order. *See* RCW 34.05.010(16) (definition of a rule), .482-.491 (defining a brief adjudication). Because the superior court could not, under the APA, receive and consider the evidence, it did not abuse its discretion by declining to do so. We affirm this portion of the superior court's order denying ATU's motion to supplement the record.

Alternatively, a superior court is authorized to remand a matter back to the agency for further fact finding and consideration before final disposition of a petition for review if it finds that

> new evidence has become available that relates to the validity of the agency action at the time it was taken, that one or more of the parties did not know and was under no duty to discover or could not have reasonably been discovered until after the agency action, and . . . the interests of justice would be served by remand to the agency.

8

RCW 34.05.562(2)(b). ATU argues that its evidence met this criteria. Kitsap Transit contends that it did not, because it did not relate to the validity of the Commission's decision at the time it was taken and because ATU could reasonably have discovered it before the Commission's decision. ATU is correct.

ATU's evidence related to the validity of the Commission's decision at the time it was taken. The evidence with which ATU sought to supplement the record described Kitsap Transit's attempts, during the pendency of its appeal to the full Commission, to locate a substantially equivalent PPO plan to comply with the examiner's order. As ATU argues, the fact that Kitsap Transit found a health insurance plan meeting the examiner's specifications, and did so before the Commission decided Kitsap Transit's appeal, contradicts the Commission's conclusion that Kitsap Transit could not possibly obtain PPO-like coverage.

ATU's evidence was also of the type that it was under no duty to discover or present to the Commission. The examiner had ordered Kitsap Transit to restore the coverage, and we find nothing in the record that would have alerted ATU that the Commission would consider striking that portion of the order on appeal. In fact, Kitsap Transit's appeal brief raised only three issues: whether Kitsap Transit committed unfair labor practices, whether business necessities excused the unfair labor practices, and whether the examiner's make-whole remedy was punitive. We cannot say that ATU had a duty to discover and present what would have been irrelevant evidence to the Commission on appeal.

For these reasons, we hold that the trial court abused its discretion by denying ATU's motion to remand this matter back to the Commission for further fact finding. We therefore reverse the trial court's denial of ATU's motion to supplement the record, and we remand to the Commission to reconsider whether Kitsap Transit should be ordered to restore substantially

equivalent PPO coverage, taking into consideration the new evidence offered by ATU, described above.[3]

We note also that the APA requires agencies to "include a statement of findings and conclusions, and the reasons and basis therefor, on all material issues of fact, law, or discretion presented on the record, *including the remedy*." RCW 34.05.461(3) (emphasis added). The examiner made no explicit finding or conclusion that ordering the reinstatement of PPO coverage would be impossible, nor did the Commission. The only mention of impossibility comes, without explanation, in the body of the Commission's decision. On remand, if the Commission affirms its finding that Kitsap Transit could not have restored PPO coverage after engaging in further fact finding, the Commission must make the findings required by RCW 34.05.461(3) so that we might understand the basis for its decision in the event of an appeal.

### III. THE COMMISSION'S REMEDIAL ORDER

The Commission affirmed the examiner's conclusion that Kitsap Transit had committed unfair labor practices through measures it took that caused ATU's members to lose their PPO coverage. In this appeal ATU challenges the remedial measures imposed by the Commission for those unfair labor practices. We hold that the Commission's remedial order was an erroneous application of governing statutes.

Where the Commission finds that a party has committed an unfair labor practice, it must "issue [an] appropriate remedial order[]." RCW 41.56.160(1). An appropriate remedial order must require the offending party "to cease and desist from [the] unfair labor practice, and to take

---

[3] On any potential mootness question on remand, see *Green River Community College v. Higher Education Personnel Board*, 107 Wn.2d 427, 730 P.2d 653 (1986).

10

such affirmative action as will effectuate the purposes and policy of" chapter 41.56 RCW. RCW 41.56.160(2).

Our review of the remedial measures the Commission selects to effectuate the purposes and policy of chapter 41.56 RCW is deferential. The Commission has substantial expertise in administering labor law, and the "'relation of remedy to policy is peculiarly a matter of administrative competence.'" *Municipality of Metro. Seattle v. Pub. Emp't Relations Comm'n*, 118 Wn.2d 621, 634, 826 P.2d 158 (1992) (quoting *State ex rel. Wash. Fed'n of State Emps. v. Bd. of Trs.*, 93 Wn.2d 60, 69, 605 P.2d 1252 (1960)). Consequently, we may not set aside the remedies ordered by the Commission because we believe others more appropriately accomplish the purposes of RCW 41.56.160; we may instead do so only where the Commission abuses the discretion granted to it by the legislature with the remedies it orders. *In re Case E-368*, 65 Wn.2d 22, 29-30, 395 P.2d 503 (1964) (quoting 2 AM. JUR. 2D *Administrative Law* § 672 (1962)).

Our deference is not, however, unlimited. The courts, not the Commission, possess the ultimate power to "determine the purpose and meaning of statutes," *Overton v. Economic Assistance Authority*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981), and thus the power to determine the bounds of the discretion granted to the Commission with the enactment of RCW 41.56.160. *See Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883, 900, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984).[4] Accordingly, while we owe deference to the *means* the Commission employs to

---

[4] *Sure-Tan* involved judicial interpretation of the appropriate remedies for a violation of the National Labor Relations Act (NLRA). Federal precedent interpreting the NLRA is persuasive precedent for our court's interpretation of similar provisions of chapter 41.56 RCW. *State ex rel. Wash. Fed'n. of State Emps., AFL-CIO v. Bd. of Trs. of Cent. Wash. Univ.*, 93 Wn.2d 60, 67-68, 605 P.2d 1252 (1980). The remedial provisions of chapter 41.56 RCW and the NLRA are largely similar, with the notable exception that RCW 41.56.160(2) specifically empowers the Commission to order monetary damages. *Compare* RCW 41.56.160 *with* 29 U.S.C. § 160(a), (c).

accomplish its statutory duties, we owe no deference in determining whether the Commission's remedial choices accomplish the *ends* the legislature required the Commission's remedial powers to serve.

We have already identified those ends. Orders issued under RCW 41.56.160 are intended to "restore the situation, as nearly as possible, to that which would have occurred but for the [unfair labor practice]" and must "restrain . . . and remove or avoid the consequences of [an unfair labor practice]." *Municipality of Metro. Seattle v. Pub. Emp. Relations Comm'n*, 60 Wn. App. 232, 240, 803 P.2d 41 (1991), *reversed on other grounds*, 118 Wn.2d 621, 826 P.2d 158 (1992). Persuasive precedent accords with this interpretation. In *Sure-Tan Inc.* the court held that the NLRA requires the NLRB to attempt "restore the situation 'as nearly as possible, to that which would have obtained but for the'" unfair labor practice and that any remedy must "be tailored to the unfair labor practice it is intended to redress." 467 U.S. at 900 (quoting *Phelps Dodge Corp. v. Nat'l Labor Relations Bd.*, 313 U.S. 177, 194, 61 S. Ct. 845, 85 L. Ed. 1271 (1941)). Similarly, the Commission has held that under RCW 41.56.160 the "standard remedy" for an unfair labor practice "includes ordering the offending party to cease and desist and, if necessary, to restore the status quo; [and to] make employees whole" for injuries caused by the unfair labor practice. *Wash. Fed'n of State Emps. v. Univ. of Wash.*, No. 24344-U-11-6238, 2013 WL 3322566, at *6 (Wash. Pub. Emp't Relations Comm'n June 24, 2013).

The examiner, in keeping with this precedent, ordered Kitsap Transit to make ATU's affected employees whole by paying them the premium savings Kitsap Transit realized by switching employees from the lost PPO coverage to the remaining HMO coverage, with adjustments. The Commission struck this aspect of the order after accepting Kitsap Transit's argument that the examiner's formula created a windfall for ATU's affected workers, making the

award punitive and beyond the Commission's power to order. *Deming Hosp. Corp. v. Nat'l Labor Relations Bd. (N.L.R.B.).*, 665 F.3d 196, 201 (D.C. Cir 2011) (windfall awards are punitive); *Burlington Police Emps. Guild v. City of Burlington*, No. 12587-U-96-2995, 1997 WL 394806 at *5 (Wash. Pub. Emp't Relations Comm'n 1997) (RCW 41.56.160 does not authorize punitive damage awards). In its place, the Commission ordered the County to reimburse the employees the difference between what would have been paid under the Premera PPO plan and any payments made under the HMO plan for all actual medical expenses. While agreeing that the remedial nature of RCW 41.56.160 does not authorize punitive damages, we conclude that the examiner's remedy did not award ATU's members a windfall, and therefore was not punitive, for two reasons.

First, under the collective bargaining agreements, ATU's members provided labor for Kitsap Transit in return for compensation. Some of this compensation came in the form of health insurance premium payments. For this reason, both judicial and commission precedent treat those premium payments as wages. *Moore v. Health Care Auth.*, 181 Wn.2d 299, 311-12, 332 P.3d 461 (2014) (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 16 P.3d 583 (2001)); *Yakima County Law Enforcement Guild*, 2006 WL 1547092 at *1. Kitsap Transit wrongfully withheld those wages with its unfair labor practice. The record here documents both the number and identities of the ATU members affected by the loss of PPO coverage and the substitution of HMO coverage and the difference in premium payments between the PPO and HMO plans. As the examiner recognized, given this data it is possible to calculate with mathematical precision the wage losses inflicted on ATU's members by Kitsap Transit's unfair labor practice. The examiner's order properly compensated ATU's affected members for their actual losses and did not award a windfall; it was not punitive. *See Moore*, 181 Wn.2d at 314 (where monetary damages provide appropriate compensation they are, by definition, remedial and not punitive).

Second, apart from wage considerations, the record contains evidence that Kitsap Transit's unfair labor practice caused damage to ATU's affected members or their families. Kitsap Transit did not cross-appeal the examiner's finding of fact 32, which the Commission adopted, making it a verity on appeal. *City of Vancouver*, 180 Wn. App. at 347. In it, the Commission found that Kitsap Transit's unfair labor practice forced ATU's members to "chang[e] doctors and service providers" to the more limited set of health care providers covered by the HMO plan. AR at 1903. This "disrupted some patients['] care and caused delays in office visits, surgeries, and procedures," as well as "caused at least one employee's college age child to lose access to care." AR at 1903. By its nature alone, the forced change of doctors and other providers may easily disrupt or diminish an individual's care. These types of injuries are compensable using damages calculated based on the wrongfully withheld premium payments. Indeed, our Supreme Court has recently stated that doing so is the method most likely to avoid a windfall to either party. *Moore*, 181 Wn.2d at 309-14.

Nevertheless, Kitsap Transit contends that we should affirm the Commission's order for four reasons. We find each unpersuasive.

1. The Order Did Not Discharge the Commission's Statutory Duty

Kitsap Transit contends that our deferential review of the Commission's remedial choices requires that we affirm its order. As we have noted, we owe deference to the Commission's choice of remedies, but it is for us to determine what is necessary for the Commission to discharge its statutory obligation to issue an appropriate remedial order. The Commission's choice of remedy here fails to discharge that statutory duty in two ways.

First, the Commission's order does little to put ATU's affected members in the position they occupied before Premera's PPO coverage ended. At best, the Commission's order

compensates ATU's members for their out-of-pocket expenses arising from the unfair labor practice. ATU's members, however, lost access to doctors they had formed relationships with, faced the disruptions and attendant delays associated with finding new doctors and, in some cases, lost access to health care. They also, as noted above, essentially lost wages. The Commission's order is not at all "tailored" to these aspects of the unfair labor practice and leaves ATU's members in a worse position than they would have been in had Kitsap Transit not committed the unfair labor practice. *Sure-Tan*, 467 U.S. at 900.

Second, the Commission's order rewards Kitsap Transit for its unfair labor practices. Kitsap Transit has reaped several hundred thousand dollars in gains because of its unfair labor practice. *See* AR at 439 (Premera's cost savings per employee who lost PPO coverage), 1241-1337 (2011 health care coverage selection survey for ATU members). As ATU notes, requiring Kitsap Transit to pay restitution to those from whom it reaped these gains is necessary to restore the situation, as nearly as possible, to that which would have existed without the unfair labor practice. Failing to do so only creates an incentive to violations by allowing the wrongdoer to benefit from its wrong, a result condemned by *Moore*, 181 Wn.2d at 314.

2. ATU's Members Were Harmed By the Loss of the PPO Plan

Next, Kitsap Transit argues that, because it paid insurance premiums to insurance providers rather than ATU's members, the members never received those payments and therefore suffered no loss based on the improperly withheld premiums, making anything other than the Commission's order inappropriate. We disagree. As noted above, Kitsap Transit essentially withheld wages from ATU's members. The fact that Kitsap Transit did not make the premium payments directly to ATU's members is immaterial. Kitsap Transit made the payments for the benefit of ATU's members, and they enjoyed the fruits of these premium payments as compensation for their labor.

The "'most elementary conceptions of justice and public policy'" require that Kitsap Transit make ATU's members whole for the loss as best as possible; here, that requires damages payments based on the premium differentials. *Moore*, 181 Wn.2d at 314 (quoting *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 53 Wn.2d 96, 99, 330 P.3d 1068 (1958)).

3. Commission Precedent Does Not Foreclose a Remedy Based On Kitsap Transit's Premium Savings

Kitsap Transit argues that commission precedent forecloses the damages ATU seeks, payment based on the cost savings of its unfair labor practice, citing *Public School Employees of North Franklin / PSE v. North Franklin School District*, No. 8854-U-90-1941, 1992 WL 753248 (Wash. Pub. Emp't Relations Comm'n 1992). In that case the Commission's examiner, although noting that commission precedent forbade an employer from profiting from an unfair labor practice, refused to order the school district to pay restitution to employees based on the savings realized by the unlawful labor practice. *N. Franklin Sch. Dist.*, 1992 WL 753248 at *9. The examiner based this decision on two factors. First, the school principal testified that it had saved no money due to the unfair labor practice. *N. Franklin Sch. Dist.*, 1992 WL 753248 at *9. Second, the union failed to show that any of its members lost work, and therefore wages, because of the unfair labor practice. *N. Franklin Sch. Dist.*, 1992 WL 753248 at *9.

For a number of reasons, *North Franklin School District* speaks with a faint voice in this appeal. First, the decision does not stand for the proposition that the Commission may never order damages based on cost savings and, given judicial interpretations of RCW 41.56.160, it could not. If unwinding the effects of an unfair labor practice requires the payment of damages based on cost savings, the Commission must order those payments unless compliance would prove impossible. Second, neither of the two factors that caused the examiner to decline to order payment of damages in *North Franklin School District* is present here. A reasonable inference from the testimony at

the hearing is that Kitsap Transit saved considerable money from the demise of PPO coverage for ATU's members. At the very least, Kitsap Transit offered no testimony that it had not saved money. Further, the record definitively establishes the ATU members who lost insurance and the value of that loss, adjusted for mitigation. Under *Moore*, the difference between premium payments does reflect a careful and technical analysis of what ATU's members lost in terms of compensation due to the unfair labor practice. *Moore*, 181 Wn.2d at 312, 314.

4. NLRB Precedent Does Not Foreclose a Remedy Based on Kitsap Transit's Premium Savings

Finally, Kitsap Transit contends that persuasive NLRB precedent precludes payment of damages based on premium savings, citing *Keystone Steel & Wire v. National Labor Relations Board* (NLRB), 606 F.2d 171 (7th Cir. 1979). In that case, the Seventh Circuit found that the NLRB's original remedy for lost health insurance coverage was too onerous and remanded for the NLRB to adopt an "appropriate and more limited remedy." *Keystone Steel & Wire*, 606 F.2d at 180. Kitsap Transit notes that the NLRB did not, either in its original opinion or on remand, require the payment of damages based on premium savings. *See Keystone Steel & Wire*, 606 F.2d at 180; *Nat'l Labor Relations Bd.* (NLRB) v. *Keystone Steel & Wire*, 653 F.2d 304, 308-09 (1981).

We find *Keystone Steel & Wire* inapposite for two reasons. First, there is no evidence that the union in *Keystone Steel & Wire* sought damages based on premium savings or that either the NLRB or the Seventh Circuit considered the issue. The case therefore is not precedential as concerns the Commission's ability to order damages based on premium savings. *Cont'l Mut. Sav. Bank v. Elliot*, 166 Wash. 283, 300, 6 P.2d 638 (1932). Second, RCW 41.56.160(2) is broader than 29 U.S.C. section 160 in that it specifically authorizes the payment of monetary damages. Given the broader authority to remedy unfair labor practices granted by our legislature, we do not

find *Keystone Steel & Wire* persuasive in Kitsap Transit's attempts to limit the Commission's remedial powers.

This analysis, although involved, ineluctably leads to one conclusion: the Commission's remedial order fails the requirement of RCW 41.56.160, established through the case law, to restore the situation, as nearly as possible, to that which would have occurred but for the unfair labor practice. With that, we must determine the proper remedy for that error. ATU asks us simply to reinstate the remedies ordered by the examiner. At oral argument, Kitsap Transit contended that a remand for further proceedings would be more appropriate. We agree with Kitsap Transit.

As we have noted, the Commission has substantial expertise in labor law developed through administering chapter 41.56 RCW. With that expertise, in our system of separated powers, the Commission has the primary responsibility for crafting remedies. We may, as we have done here, invalidate those remedies, but it is for the Commission to propose them in the first place. Given the logic of our holding here today, the examiner's remedy is certainly a permissible one. But the Commission may determine that there are others consistent with this opinion that vindicate the purposes and policies of chapter 41.56 RCW. We remand to the Commission so that it may make that determination.

## CONCLUSION

We hold that the superior court abused its discretion when it denied ATU's motion to remand the matter back to the Commission for further fact finding. We hold also that the Commission erroneously interpreted and applied the provisions of chapter 41.56 RCW when it declined to order Kitsap Transit to make ATU's members whole for the damages inflicted by its unfair labor practices and that the superior court therefore erred in upholding that commission

18

action. Consequently, we reverse the superior court's decision upholding the Commission's order and remand this matter to the Commission for further proceedings consistent with this opinion.

BJORGEN, A.C.J.

We concur:

WORSWICK, J.

MELNICK, J.