**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 21
AFL-CIO,

          *Petitioner,*

      v.

NATIONAL LABOR RELATIONS
BOARD,

          *Respondent,*

LUCENT TECHNOLOGIES INC.,
      *Respondent-Intervenor.*

No. 07-72750

NLRB No.
33-CA-14450

OPINION

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted
February 11, 2009—San Francisco, California

Filed April 20, 2009

Before: Ronald M. Gould, Jay S. Bybee, and
Timothy M. Tymkovich,* Circuit Judges.

Opinion by Judge Gould

---

*The Honorable Timothy M. Tymkovich, Circuit Judge for the Tenth
Circuit Court of Appeals, sitting by designation.

## COUNSEL

Gilbert A. Cornfield, Cornfield and Feldman, Chicago, Illinois, for the petitioner.

Robert J. Englehart and Daniel A. Blitz, National Labor Relations Board, Washington, DC, for the respondent.

Michael F. McGahan and Donald Krueger, Epstein Becker & Green, P.C., New York, New York; Joseph D. Miller, Epstein Becker & Green, P.C., San Francisco, California, for the intervenor.

---

## OPINION

GOULD, Circuit Judge:

### I

Lucent Technologies ("Lucent") purchased AG Communications Systems ("AG") and decided to merge Lucent with AG. International Brotherhood of Electrical Workers, Local 21, AFL-CIO ("Local 21"), which represented the AG telephone equipment installers before the merger, filed charges with the National Labor Relations Board ("the Board") against Lucent for failure to bargain regarding Lucent's merger with AG. The ALJ dismissed the complaint but the Board reversed, holding that Lucent was exempted from bargaining over the decision to merge, but should have bargained with Local 21 over the effects of the merger. However, the Board decided not to impose retroactive bargaining or back pay and the remedy given was a cease and desist order and notice-posting requirement. Thinking the remedy inadequate, Local 21 petitions for review, and we deny the petition.

### II

Lucent is engaged in the manufacture, installation, and sale of telecommunications equipment and services. AG is a joint

venture created by Lucent's predecessor and a predecessor of Verizon Communications, and is engaged in substantially the same telecommunications business as Lucent. The joint venture agreement required Lucent to purchase 100% of AG stock by December 31, 2003. By 2000, Lucent owned about 90% of AG stock, and on February 3, 2003, Lucent purchased the remainder and owned AG in its entirety.

After purchasing AG, Lucent began to merge AG into Lucent to streamline operations and to increase efficiency and profitability. Before the merger, the approximately 250 AG telephone equipment installers were represented by Local 21 and the approximately 2,700 Lucent telephone equipment installers were represented by Communications Workers of America ("CWA"). After the final purchase of AG stock, Lucent developed a plan to integrate AG and Lucent installers into a single bargaining unit to be represented by CWA.

By April 1, 2003, most departments of AG were merged into Lucent; Lucent management gained control of operations and many AG employees became Lucent employees. This overall merger included the gradual integration of the AG installers into Lucent, but it was not until July 17, 2003 that Lucent notified Local 21 that as of August 1, 2003, the AG installers' bargaining unit would be merged into the Lucent bargaining unit—and that the merged unit would be represented exclusively by CWA and covered by the Lucent-CWA collective bargaining agreement.

On July 21, Local 21 requested bargaining over the effects of the merger, but neither AG nor Lucent responded. On August 1, the bargaining units were completely merged into a single unit represented by CWA. At that time, Lucent entered into negotiations with CWA regarding the effects of the merger on the installers. As a result, former AG installers remained employed with full pay and benefits, and received seniority credit for their work at AG.

On October 22, 2003, Local 21 filed an unfair labor practice charge with the Board, alleging that AG and Lucent violated the National Labor Relations Act ("NLRA") by failing to negotiate over the decision to merge and the effects of that decision. In 2004, the Board's General Counsel issued a complaint against AG and Lucent echoing Local 21's allegations. After hearings, the ALJ decided that as of August 1, 2003, when the bargaining units were completely merged, neither Lucent nor the shell of AG owed Local 21 a duty to bargain; rather, any bargaining obligations were owed to CWA exclusively. The ALJ dismissed the complaint in its entirety.

Both Local 21 and the Board's General Counsel filed exceptions to the ALJ's decision. The exceptions generally contended that the ALJ erred by not finding that AG and Lucent constituted a single employer prior to August 1, 2003, and erred by not finding any violation of the duty to bargain.

The Board held that (1) Lucent and AG were in fact a "single employer" as early as April 1, 2003; (2) Lucent was exempted from bargaining over the decision to merge the companies, including the bargaining units, because the merger was a core business decision under *First National Maintenance Corp. v. NLRB*, 452 U.S. 666 (1981), and was not primarily motivated by labor costs; (3) Lucent had a duty to bargain with Local 21 over the effects of the merger on former Local 21 installers; and (4) despite that duty, a remedy under *Transmarine Navigation Corp.*, 170 NLRB 389 (1968), forcing retroactive effects bargaining and awarding back pay, was not warranted. The Board held such a remedy inappropriate in this case largely because the former Local 21 members became represented by CWA, and CWA adequately represented the interests of those installers on the effects of the merger. Dissenting Board Member Walsh agreed that bargaining over the decision to merge was not required, but would have granted a *Transmarine* remedy to Local 21 on the effects-bargaining claim. Local 21 did not file a motion with the Board to reconsider any of its findings or holdings, but

instead petitioned this court for review of the Board's decision.

### III

Local 21 argues that Lucent violated the NLRA by refusing to bargain over the decision to merge the installer bargaining units. An employer must bargain in good faith "with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(a)(5), (d). When a claim is presented to the Board, its decision on whether a violation of the statute has occurred is "accorded considerable deference as long as it is rational and consistent with the statute." *Local Joint Executive Bd. of Las Vegas v. NLRB*, 515 F.3d 942, 945 (9th Cir. 2008) (internal quotation marks omitted). The Board's findings of fact must be taken as conclusive if they are supported by "substantial evidence." 29 U.S.C. § 160(e).

**[1]** In *First National*, the Supreme Court held that a company's decision to halt work at a particular branch and lay off workers was not subject to bargaining because it was a core business decision; it was primarily about the economics of running the business, not about terms and conditions of employment. *First Nat'l*, 452 U.S. at 686. The Court reasoned that when a company makes a core business decision that is not driven primarily by labor issues, it is unlikely that mandating bargaining with a union would be productive. *Id.* at 681-82. The Court concluded that "management must be free from the constraints of the bargaining process to the extent essential for the running of a profitable business" and that bargaining over the business decision itself should only be mandated "if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." *Id.* at 678-79.

**[2]** Here, the issue is whether Lucent's decision to merge with AG, including the bargaining units, was a core business decision or whether it was instead a decision made primarily

to reduce labor costs. We agree with the Board that the merger decision here was the kind of core business decision about which bargaining is not mandatory under *First National.* Lucent paid $20 million to purchase Verizon's remaining shares in AG, and then proceeded to integrate almost all operations—including sales, finance, human resources, IT, and security—in order to eliminate redundancies and streamline operations. The real estate and assets of the companies were also merged. The Board explicitly found that the integration decision was not driven by a desire to reduce telephone equipment installer labor costs and held unanimously that bargaining was not required for the core business decision to merge. Because the Board's factual finding that the merger decision was based primarily on considerations other than labor costs is supported by "substantial evidence," we must take that finding as conclusive. 29 U.S.C. § 160(e). We conclude that the burden placed on the conduct of the business by forcing bargaining in this case would outweigh any potential benefit to the bargaining process, and that Lucent's decision to merge was exempt from bargaining. *See First Nat'l*, 452 U.S. at 679.[1]

## IV

[3] The parties do not dispute that under *First National*, even if Lucent was exempted from bargaining over the

---

[1]Local 21 now argues, for the first time on appeal, that the decision to merge was actually motivated by labor costs. However, an argument not raised to the Board, either in the exceptions or in a motion for reconsideration of the Board's decision, is likely waived. *See* 29 U.S.C. § 160(e)-(f) ("[N]o objection that has not been urged before the Board . . . shall be considered by the Court" except in "extraordinary circumstances."); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982); *NLRB v. Sambo's Rest., Inc.*, 641 F.2d 794, 795-96 (9th Cir. 1981). However, we need not rest our decision on Local 21's waiver of that argument because the Board's finding that the merger was not motivated by labor costs is supported by substantial evidence, and is therefore conclusive. 29 U.S.C. § 160(e).

merger decision itself, Lucent nonetheless was required to bargain with Local 21 about the effects of the merger. *See id.* at 681-82. However, Local 21 argued in its briefing that the Board erred by not granting a full *Transmarine* remedy, including retroactive effects bargaining and back pay.**²**

[4] "The Board's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964) (internal quotation marks and citation omitted). The Board's choice of remedy is only set aside by this court for "clear abuse of discretion." *Cal. Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 311 (9th Cir. 1996). For an effects-bargaining violation, the standard remedy is known as a *Transmarine* remedy, and includes back pay and an order to bargain over the effects of the decision. *Transmarine*, 170 NLRB at 389-90. However, as with other remedies, the Board still has broad discretion, and must consider the particular circumstances of the case before deciding exactly what remedy to prescribe. *See, e.g.*, *Nat'l Terminal Baking Corp.*, 190 NLRB 465, 466-67 (1971).

[5] We conclude that the Board did not abuse its discretion in determining that a full *Transmarine* remedy was not required in this case. The Board provided ample reasoning in its opinion: AG installers suffered no detriment from the failure to bargain over effects, and even if there was some detri-

---

**²**At oral argument, counsel for Local 21 argued instead that Local 21 was entitled to a remedy under *Holly Farms Corp.*, 311 NLRB 273 (1993). However, we agree with the Board that *Holly Farms* is inapposite because in that case, the integration at issue lacked a well-defined timetable at the time the company withdrew recognition from the bargaining unit. *Id.* at 279. Additionally, the employees there were constructively terminated, so it was sensible for the Board to award retroactive remedies. Here, the installers maintained full employment and were represented adequately by CWA. Because the Board decision and the briefing focused on the applicability of a *Transmarine* remedy, we discuss that remedy here.

ment, that harm is outweighed by the disruption that would likely be caused by forcing retroactive bargaining with Local 21 when all of the employees are now represented by CWA. Even if some union members may have been harmed in some way as a result of the merger, Local 21 bears the burden of showing that after-the-fact bargaining over effects would clearly fix any alleged harm, and also bears the burden of showing that the Board clearly abused its discretion by not ordering the *Transmarine* remedy.

Specifically, the Board found that: (1) "There is no contention that the terms and conditions of employment received by the former AG installers after their integration into the CWA-represented Lucent installer unit were in any way inferior to the terms and conditions of employment that they had received prior to the units' merger"; (2) "there is no basis in this case for effects bargaining over such topics related to loss of employment, because the former AG installers continued to be employed by the Respondent with full pay and benefits" and "continued to retain union representation after their integration into the Lucent unit"; (3) Lucent "bargained with CWA for many of the matters that would be the substance of bargaining with IBEW Local 21" and "[a] positive outcome for former AG installers was achieved"; and (4) back pay would be an unwarranted windfall to the employees who retained full employment and union representation, albeit from CWA instead of Local 21.

We consider supported by substantial evidence and fairly compelling the Board's finding that former AG employees were fully represented by CWA at the moment the merger occurred. CWA bargained with Lucent on behalf of the former AG installers and won important concessions. To show that the Board erred in its remedy, Local 21 must at least establish that ordering retroactive effects bargaining with Local 21 would have achieved more for the former AG installers than the larger CWA union was able to achieve for those installers. It seems more likely, as the Board reasoned,

that if Lucent had been forced to bargain with both CWA and Local 21, the AG installers probably would have received worse terms because the larger CWA likely would have been in a better bargaining position than Local 21. Local 21 offers nothing to rebut this conclusion.

[6] Instead, Local 21 merely lists some evidence it contends shows that AG installers were harmed by the lack of effects bargaining. However, Local 21 has not shown that former AG installers were indeed in an inferior position after the merger.[3] Local 21 argues that layoffs occurred before and after the merger but does not explain the relevance of any alleged layoffs. Specifically, Local 21does not argue that it could have avoided layoffs more effectively than CWA. By contrast, Lucent points to evidence in the record that any layoffs were in order of seniority and were based on a reduction in business.

Local 21 also alleges generally that former AG installers suffered reduced wages, benefits, or seniority rights after the merger. However, Local 21 provides no support for this argument other than listing a small number of differences in the collective bargaining agreements. Local 21 does not show that it could have attained terms superior to those achieved by CWA, and does not explain how any alleged differences in the collective bargaining agreements establish clear error by the Board.

Finally, Local 21 argues that the case should be remanded to the ALJ for further fact finding regarding the actual effects of the merger. However, the Board has cited substantial evi-

---

[3]Local 21 also argues that it was unable to provide adequate evidence of post-merger harm to union members because the ALJ held such evidence irrelevant. However, the ALJ's ruling was limited to the subject of post-merger layoffs and the witness's knowledge of general industry trends; and more importantly, the ruling was in response to an objection joined by Local 21's counsel. There is adequate evidence in the record to affirm the Board's remedy.

dence supporting its remedy decision, and it was not clear error for the Board to decide against remand.

**[7]** We agree with the Board that Lucent's delay in notifying Local 21 of the merger decision does not itself compel a *Transmarine* remedy. The Board found a violation of the duty to bargain over the effects of the merger and crafted an appropriate remedy; Local 21 has not alleged that any concealment of Lucent's decision to merge is a separate violation of the NLRA. Lucent's delay here does not compel the conclusion that the Board clearly erred in crafting its remedy.

**[8]** The Board had legitimate reasons for limiting the remedy in the way that it did, including preventing a back pay windfall to fully employed and represented installers. In light of the significant discretion granted to the Board in crafting its remedies, we conclude that the Board did not abuse its discretion in this case.

The petition for review is **DENIED**.