FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 25 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ROCK-TENN SERVICES, INC., formerly known as Smurfit-Stone Container Enterprises, Inc.,<br><br>    Petitioner,<br><br> v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>    Respondent,<br><br>TEAMSTERS DISTRICT COUNCIL NO. 2, LOCAL 388-M, affiliated with International Brotherhood of Teamsters,<br><br>    Respondent-Intervenor. | No. 12-70516<br><br>NLRB No. 32-CA-24480<br><br>MEMORANDUM[*] |
| NATIONAL LABOR RELATIONS BOARD,<br><br>    Petitioner,<br><br>TEAMSTERS DISTRICT COUNCIL NO. 2, LOCAL 388-M, affiliated with International Brotherhood of Teamsters, | No. 12-70934<br><br>NLRB No. 32-CA-24480 |

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Petitioner-Intervenor,

v.

ROCK-TENN SERVICES, INC., formerly known as Smurfit-Stone Container Enterprises, Inc.,

Respondent.

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted September 16, 2014
San Francisco, California

Before: FISHER, BERZON, and HURWITZ, Circuit Judges.

Petitioner/Cross-Respondent Rock-Tenn Services, Inc. ("Rock-Tenn" or "the Company"), petitions for review of an order of the National Labor Relations Board ("the Board") holding that Rock-Tenn violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(5), (1) in bargaining on the effects of a plant closure. The Board cross-applies for enforcement of its order.

"The [Board's] order will be enforced if it correctly applied the law and its factual findings are supported by substantial evidence." *Retlaw Broad. Co. v. NLRB*, 172 F.3d 660, 664 (9th Cir. 1999); *see also* 29 U.S.C. § 160(e); *Universal*

*Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "On questions of law, we will uphold the NLRB's decisions related to the NLRA as long as they are reasonably defensible." *NLRB v. Int'l Bhd. of Elec. Workers, Local 48*, 345 F.3d 1049, 1054 (9th Cir. 2003).

**(1)** An employer has no duty to bargain with a union over its decision to close its business or a part of its business. An employer does have a duty to bargain in good faith with an incumbent union, however, over the effects of a closure. *See First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 681 (1981). This duty stems from sections 8(a)(5) and 8(d) of the NLRA, 29 U.S.C. §§ 158(a)(5), (d), which make it an unfair labor practice for an employer or a union to fail to bargain in good faith over certain "mandatory" subjects, *First Nat'l Maint. Corp.*, 452 U.S. at 676; that is, over "'wages, hours, and other terms and conditions of employment.'" *NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 349 (1958) ("*Borg-Warner*").

"The duty [to bargain] is limited to [mandatory] subjects, and within that area neither party is legally obligated to yield." *Id.* By contrast, with regard to all other, "permissive" subjects of bargaining, "each party is free to bargain or not to bargain, and to agree or not to agree." *Id.* For that reason, *Borg-Warner* holds, it is a violation of the duty to bargain in good faith to "refuse to enter into

3

agreements on the ground that they do not include some proposal which is not a mandatory subject of bargaining." *Id.* The parties agree that early termination of a collective bargaining agreement ("CBA" or "contract") that lacks a reopener provision is a permissive subject of bargaining. *See* 28 U.S.C. § 158(d).

Rock-Tenn nonetheless argues it was entitled to "link[] permissive and mandatory subjects of bargaining" because the subjects were part of a "quid pro quo package proposal." The Board rejected that formulation, if taken as a broad proposition, in *Borden, Inc.*, 279 NLRB 396, 399 (1986): "[i]f [the] argument were accepted, it would mean that a permissive subject of bargaining would become mandatory whenever it was presented together with a mandatory subject. That is not the law."

The Board has, however, held that a permissive bargaining subject may be treated as a mandatory bargaining subject when there is a "sufficient nexus" between the subjects, such that they are "inextricably intertwine[d]." *Id.*; *see also Regal Cinemas, Inc.*, 334 NLRB 304 (2001); *NLRB v. Bartlett-Collins Co.*, 639 F.2d 652, 656 (10th Cir. 1981). Rock-Tenn argues that its bargaining posture comes within that formulation. According to Rock-Tenn, "early termination of the contract is inextricably linked to severance pay . . . because the parties had already agreed to [a] framework" for future plant-closure effects-bargaining sessions under

4

which Rock-Tenn could make offers regarding severance pay and benefits continuation contingent on the Union's acceptance of early CBA termination.  We assume, without deciding, that such a "framework" agreement would have altered the bargaining obligations otherwise applicable under *Borg-Warner*, pursuant to the Board's "inextricably intertwined" exception.

The record, however, supports the Board's determination that there was no prior "agreement" to link the permissive subject of early CBA termination to Rock-Tenn's offers on mandatory subjects.

First, as the Board held, the language on which Rock-Tenn relies did not obligate *the Union* to do anything; it only stated that it was "*the Company's* intent in future plant closures, if any, to bargain a severance/impact bargaining formula that is not inconsistent with the severance/impact bargaining agreements at San Jose."  (emphasis added).  Nor did that language say anything specifically about early CBA termination.  Moreover, the early CBA termination for the San Jose plant was to occur only *after* the plant closed or the last employee was laid off, whichever was later, rather than before either of these events, as Rock-Tenn insisted during the Fresno bargaining sessions.

The Board therefore validly rejected Rock-Tenn's position that it did not commit an unfair labor practice by insisting on a permissive subject because there was an agreement allowing it to do so.

**(2)** This Court reviews the Board's choice of remedy for an abuse of discretion. *Sever v. NLRB*, 231 F.3d 1156, 1165 (9th Cir. 2000). The Board's remedial order may only be reversed if it is "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943).

"For an effects-bargaining violation, the standard remedy is known as a *Transmarine* remedy, and includes back pay and an order to bargain over the effects of the decision. . . . [A]s with other remedies, the Board . . . has broad discretion" in fashioning a *Transmarine* remedy for an effects-bargaining violation. *Int'l Bhd. of Elec. Workers, Local 21 AFL-CIO v. NLRB*, 563 F.3d 418, 423 (9th Cir. 2009) (citing *Transmarine Navigation Corp.*, 170 NLRB 389 (1968)).

Rock-Tenn has not shown that the Board abused its discretion in awarding a *Transmarine* remedy to 92 Fresno plant employees. Rock-Tenn's sole argument on this point is that only the four employees discharged on the date of the closure were "affected" by the violation. But the Board determined that the Company's

6

violation in fact affected all of the employees terminated from the Fresno plant as a result of the closure: "[a]ll 92 . . . ha[d] been denied the benefit of collective-bargaining representation concerning the effects of the Fresno closure," in that the "parties clearly intended to address the impact of the Fresno closure on all . . . [Fresno] employees" in their effects bargaining, not just the four who were terminated on the actual date of closure.

As the Board "provided ample reasoning in its opinion" for its decision to award a *Transmarine* remedy to all 92 employees, we conclude the Board did not abuse its discretion in this case. *Int'l Bhd. of Elec. Workers*, 563 F.3d at 425.

**(3)** Rock-Tenn is correct that any backpay previously paid to the unit employees to date should be offset against any amounts determined to be due. *See Knoxville Distribution Co.*, 298 NLRB 688, 698 (1990), *enf'd* 919 F.2d 141 (6th Cir. 1990) (unpublished disposition).

For the foregoing reasons, Rock-Tenn's petition for review is **DENIED** and the Board's petition for enforcement is **GRANTED.**