IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LINCOLN COUNTY, | ) | No. 37054-2-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PUBLIC EMPLOYMENT RELATIONS | ) | PUBLISHED OPINION |
| COMMISSION of the State of | ) | |
| Washington; OFFICE OF THE | ) | |
| ATTORNEY GENERAL; and | ) | |
| TEAMSTERS LOCAL 690, a labor | ) | |
| organization, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Public employers are adopting resolutions requiring collective bargaining to be conducted in public. Bargaining representatives, believing private collective bargaining to be more effective in the give and take process for resolving differences, often push back on these resolutions. Here, Lincoln County (County) adopted a resolution requiring collective bargaining to be conducted in public. In response, Teamsters Local 690 (Teamsters) adopted a resolution requiring collective bargaining to be conducted in private.

No. 37054-2-III
*Lincoln County v. Pub. Emp't Relations Comm'n*

This case answers the question of what must be done when a public employer and a bargaining representative cannot agree on the procedure for collective bargaining and no collective bargaining, thus, takes place. We hold that a public employer and a bargaining representative each commit an unfair labor practice (ULP) when they refuse to bargain on mandatory subjects of bargaining unless the other agrees to a procedure that it lacks the prerogative to unilaterally decide. To this extent, we affirm PERC's[1] decision.

We further hold that procedures for collective bargaining are permissive subjects of bargaining. As such, the inability of the parties to agree on procedures for bargaining does not result in the return to status quo. To this extent, we reverse PERC's decision. We remand this case to PERC for it to order appropriate relief.

FACTS

Teamsters Local 690 represents two bargaining units of workers employed in Lincoln County. *Lincoln County v. Teamsters Local 690*, No. 128814-U-17 (Wash. Pub. Emp't Relations Comm'n Apr. 3, 2018) . The County is governed by three elected commissioners. The commissioners serve as the County's representative for collective bargaining. Teamsters and the County had two collective bargaining agreements, one for each unit. Those agreements expired after December 31, 2016.

_____

[1] Public Employment Relations Commission.

2

In September 2016, the County passed Resolution 16-22. The resolution, which was passed without notice to Teamsters, required all collective bargaining to be done in public. The idea for the resolution originated several years earlier when the County received information from the Freedom Foundation about opening bargaining to the public. The County used a template, e-mailed to it from the Freedom Foundation, as the basis for its resolution. The County hoped that by making collective bargaining transparent, voters would more likely pass a tax increase on the November ballot.

Teamsters promptly met with the County and asked it to rescind its recent resolution. The County refused. *Id.* (Finding of Fact 5).

Over the next few months, Teamsters filed with PERC two ULP complaints against the County. A PERC hearing examiner dismissed both complaints.

In January 2017, Teamsters and the County began bargaining in public a new collective bargaining agreement. *Id.* (Finding of Fact 7). Teamsters stated it disagreed with holding the meetings in public and was not waiving its position. *Id.* The parties reached agreement on several issues, but because a reporter was present, they did not discuss others. *Id.* (Finding of Fact 8). When they got to those issues, Lincoln County's sheriff asked to engage in private discussions. Sometime later, the sheriff, the undersheriff, and Teamsters discussed those issues privately.

3

In February 2017, Teamsters passed its own resolution. The resolution, passed without notice to the County, required all collective bargaining to be done in private. *Id.* (Finding of Fact 10).

Later in February, the parties reconvened for additional collective bargaining. *Id.* (Finding of Fact 11). Teamsters stated it preferred the longstanding practice of bargaining in private. The County stated it was ready, willing, and able to bargain in public, consistent with its resolution. The two repeated their positions on how they would proceed several times before the County questioned whether any bargaining would be done that day. *Id.* (Findings of Fact 11-12). Teamsters left the meeting and went into the breakroom. *Id.* (Finding of Fact 12). The County kept the meeting open until Teamsters left the building. The parties do not dispute that bargaining in private or public is classified as a ground rule or bargaining procedure and is a permissive subject of bargaining. *Id.* (Finding of Fact 13).

The County filed a ULP complaint against Teamsters, alleging the union refused to bargain on mandatory subjects of bargaining unless the County acquiesced on a permissive subject of bargaining. In turn, Teamsters filed a ULP complaint against the County, alleging it was the County that refused to bargain. The complaints were consolidated into a single hearing.

4

The case was heard before a hearing examiner. The hearing examiner issued a decision that included findings of fact and conclusions of law. The examiner concluded both parties committed ULPs. Both parties appealed to the PERC board. *Lincoln County v. Teamsters Local 690*, No. 128814-U-17 (Wash. Pub. Emp't Relations Comm'n Aug. 29, 2018).

PERC adopted the findings of fact and conclusions of law of the hearing examiner and concluded both parties committed ULPs by refusing to negotiate mandatory subjects of bargaining unless they first agreed on a bargaining procedure, a permissive subject of bargaining. As a remedy, PERC ordered the parties to bargain in good faith over the procedure for collective bargaining. If the parties could not agree on the procedure after two sessions of good faith bargaining, PERC would appoint a mediator to assist the parties. If mediation failed, PERC concluded the parties must return to status quo, which it found was private collective bargaining.

Both parties appealed this decision to the Lincoln County Superior Court, which affirmed PERC's order. The County timely filed this appeal, and Teamsters timely cross appealed.

No. 37054-2-III
*Lincoln County v. Pub. Emp't Relations Comm'n*

ANALYSIS

The arguments raised in the appeal and cross-appeal require us to address three broad issues: (1) does the preemption doctrine either validate or invalidate the County's resolution, (2) did PERC correctly conclude that both parties committed ULPs, and (3) did PERC err in applying the status quo doctrine to bargaining procedures, a permissive subject of bargaining.[2]

STANDARDS OF REVIEW

We review an appeal from a PERC decision involving a ULP in accordance with the Administrative Procedure Act (APA), chapter 34.05 RCW. *Amalgamated Transit Union, Local 1384 v. Kitsap Transit*, 187 Wn. App. 113, 123, 349 P.3d 1 (2015); *City of Vancouver v. Pub. Emp't Relations Comm'n*, 107 Wn. App. 694, 702, 33 P.3d 74 (2001).

---

[2] Teamsters also argues PERC committed reversible error by not considering evidence excluded by the hearing examiner. The excluded evidence consists of proposed exhibits showing the connection between the County's resolution and the Freedom Foundation. Teamsters sought to have the exhibits admitted to support its argument that the County passed the resolution in bad faith.

Here, the hearing examiner permitted sufficient evidence to understand the connection between the resolution and the Freedom Foundation. It rejected the exhibits because they were irrelevant. *Lincoln County*, No. 128814-U-17 at n.8 (filed Apr. 3, 2018). Nothing in the hearing examiner's decision, PERC's decision, or ours, requires us to decide whether the County passed the resolution in bad faith. Because the proposed exhibits have no tendency to make the existence of any fact of consequence more probable or less probable, we conclude the hearing examiner did not abuse its discretion. ER 401.

Under the APA, we may grant relief from an agency order for any one of nine reasons set

forth in RCW 34.05.570(3). Of these, the one relevant to our disposition is whether

PERC erred in interpreting or applying the law. RCW 34.05.570(3)(d).

When reviewing questions of law, an appellate court may substitute its

determination for that of PERC, although PERC's interpretation of the Public Employees'

Collective Bargaining Act (PECBA), chapter 41.56 RCW, is entitled to great weight and

substantial deference, given PERC's expertise in administering this law. RCW 34.05.570;

*City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 382, 831

P.2d 738 (1992); *Amalgamated Transit Union*, 187 Wn. App. at 123. In addition to

Washington law, we rely on federal decisions construing the National Labor Relations

Act (NLRA), 29 U.S.C. §§ 151-169, because decisions construing the NLRA are

persuasive when construing similar provisions of the PECBA. *Pasco Police Officers'

Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997).

RELEVANT LEGAL PRINCIPLES

The PECBA "'regulates the subjective conduct and motivations of the parties in a

collective bargaining situation, but expressly refrains from mandating any result or

procedure for achieving final resolution of an intractable bargaining dispute.'" *Id.* at 460

(quoting Stuart S. Mukamal, *Unilateral Employer Action Under Public-Sector Binding*

*Interest Arbitration*, 6 J.L. & COM. 107, 113-14 (1986). PERC intervenes "only in those limited circumstances where the conduct of one party or the other indicates a refusal to bargain in good faith," which is defined as "an absence of a sincere desire to reach agreement." *Id.* at 114.

If a subject of bargaining is permissive, parties may negotiate, but each party is free to bargain or not bargain and to agree or not agree. *Pasco Police Officers' Ass'n*, 132 Wn.2d at 460-61. Agreements on permissive subjects of bargaining "must be a product of renewed mutual consent" and expire with the parties' collective bargaining agreement. *Klauder v. San Juan County Deputy Sheriffs' Guild*, 107 Wn.2d 338, 344, 728 P.2d 1044 (1986). A party commits an unfair labor practice when it bargains to impasse over a permissive subject of bargaining. *Id.* at 342.

Permissive subjects fall into different categories. Some authorities, such as the employer's authority to determine its budget, are managerial prerogatives. *Spokane Educ. Ass'n v. Barnes*, 83 Wn.2d 366, 376, 517 P.2d 1362 (1974). When a permissive subject is a managerial prerogative, the employer is free to unilaterally decide the subject. *See Int'l Bhd. of Elec. Workers, Local 21 v. Nat'l Labor Relations Bd.*, 563 F.3d 418, 422 (9th Cir. 2009). Similarly, if the permissive subject is a union prerogative, the union is free to unilaterally decide the subject. *See, e.g.*, *Ramada Plaza Hotel*, 341 N.L.R.B. 310, 310 n.2

(2004). This follows, where a permissive subject of bargaining is neither a managerial prerogative nor a union prerogative; neither party may unilaterally impose on the other its decision on the subject. *See, e.g.*, *Kent Educ. Ass'n v. Kent Sch. Dist. No. 415*, No. 438-U-76-49 (Wash. Pub. Emp't Relations Comm'n June 26, 1979).

PREEMPTION ARGUMENTS

The County's contention

The County contends PERC erred by effectively ruling that the PECBA preempted its resolution. We do not construe PERC's decision in this manner. Nevertheless, we briefly discuss the County's preemption argument.

The County concedes that preemption is appropriate to the extent its resolution thwarts a legislative purpose of the PECBA. *See Emerald Enter., LLC v. Clark County*, 2 Wn. App. 2d 794, 804, 413 P.3d 92, *review denied*, 190 Wn.2d 1030, 421 P.3d 445 (2018). An important legislative purpose of the PECBA is that public employers and the bargaining representatives collectively bargain mandatory subjects such as wages, hours, and terms or conditions of employment. *See* RCW 41.56.030(4) (defining "collective bargaining"); RCW 41.56.140(4) (making it a ULP for a public employer to refuse to collectively bargain with a certified bargaining representative); RCW 41.56.150(4)

9

(making it a ULP for a bargaining representative to refuse to engage in collective bargaining).

If we conclude the County lacks unilateral authority to insist on public collective bargaining and if we conclude the County's insistence on abiding by its resolution resulted in its refusal to collectively bargain mandatory subjects, the County's resolution thwarted the legislative purpose of the PECBA. We discuss these two issues elsewhere in this opinion.

### Teamster's contention

Teamsters argues the legislature intended for the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, to occupy the field with respect to open meetings when, in RCW 42.30.030, it declared "all" meetings of the governing body of a public agency must be open and public. It argues that the legislature, by exempting collective bargaining from the OPMA,[3] impliedly preempted resolutions such as the County's. We disagree.

A state statute preempts local legislation where the legislature, either expressly or implicitly, occupies the field, leaving no room for concurrent jurisdiction. *Watson v. City of Seattle*, 189 Wn.2d 149, 171, 401 P.3d 1 (2017). For a statute to expressly

---

[3] *See* RCW 42.30.140(4)(b).

preempt local legislation, it must include clear preemption language, specifically calling out that intent. *Id.* Teamsters concedes the OPMA does not contain clear preemption language.

In determining whether the OPMA impliedly preempts the field of open meetings, we consider the purposes of the legislative enactment, and the facts and circumstances upon which the enactment was intended to operate. *Lenci v. City of Seattle*, 63 Wn.2d 664, 669-70, 388 P.2d 926 (1964), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). When construing a statute, our fundamental objective is to ascertain and give effect to the legislature's intent. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). The declared intent of the OPMA is to advance government transparency. RCW 42.30.010. We, thus, construe the OPMA liberally to advance this intent. *Columbia Riverkeeper*, 188 Wn.2d at 435.

In *Lenci*, the question was whether the city of Seattle's ordinance that required eight-foot high walls around wrecking yards was preempted by state law that required six-foot high walls around such yards. The court held, "'the fact that a city charter provision or ordinance enlarges upon the provisions of a statute by requiring more than the statute requires, does not create a conflict unless the statute expressly limits the requirements.'"

11

63 Wn.2d at 671 (quoting *State ex rel. Isham v. City of Spokane*, 2 Wn.2d 392, 398, 98 P.2d 306 (1940)).

Here, the County's ordinance enlarges on the OPMA's requirements for open meetings by creating greater transparency. We decline to construe the OPMA as preempting local ordinances, such as the resolution before us, from providing greater public transparency. Such a construction would frustrate the declared intent of the OPMA.

BOTH PARTIES COMMITTED ULPS

The County's contention

The County contends PERC erred by ordering the parties to bargain over whether collective bargaining should be public or private. The County argues that public collective bargaining is a managerial prerogative and it should not be required to bargain over it.

When examining the question whether an issue is a mandatory subject of bargaining or a managerial prerogative, this court applies a balancing test. *Int'l Ass'n of Fire Fighters, Local Union 1052 v. Pub. Emp't Relations Comm'n*, 113 Wn.2d 197, 203, 778 P.2d 32 (1989). "On one side of the balance is the relationship the subject bears to 'wages, hours and working conditions'. On the other side is the extent to which the

subject lies 'at the core of entrepreneurial control' or is a management prerogative." *Id.* (internal quotation marks omitted) (quoting *Spokane Educ. Ass'n*, 83 Wn.2d at 376). "Where a subject both relates to conditions of employment and is a managerial prerogative, the focus of inquiry is to determine which of these characteristics dominates." *Fire Fighters, Local Union 1052*, 113 Wn.2d at 203.

The County argues that public collective bargaining has no relationship to wages, hours, or working conditions. We agree. The County then argues that the public has a right to know how its tax dollars are spent and cites *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, ___ U.S. ___, 138 S. Ct. 2448, 2474, 201 L. Ed. 2d 924 (2018). We certainly agree with this principle and note that the County has the ability to keep the public informed of how its tax dollars are spent.[4] But the public's right to know how its tax dollars are spent is not the test. The test is whether public collective bargaining is "'at the core of entrepreneurial control.'" *Fire Fighters, Local Union 1052*, 113 Wn.2d at 203 (quoting *Spokane Educ. Ass'n*, 83 Wn.2d at 376).

---

[4] For instance, the County can begin in open session by explaining to the public its current budgetary issues and what topics it anticipates will be discussed during collective bargaining. After each bargaining session, the County can provide the public regular updates of what topics were discussed and the progress of negotiations. Once negotiations have concluded, the County can inform the public how each of the issues was decided and how these issues impact its budget.

We see no evidence of this.

If public bargaining was at the core of entrepreneurial control, the legislature—itself a public entity—would not have exempted collective bargaining from open meetings. Even in the midst of the present dispute, the County requested that some subjects be discussed in private. This shows that public bargaining, without some flexibility to engage in private discussions, would inhibit the free flow of information the County needs to make informed decisions.

### Teamster's contention

Teamsters contends the procedure for collective bargaining is the type of a permissive subject where past practice determines who prevails and, because past practice was private collective bargaining, its desired process must prevail. Teamsters wholly relies on a footnote in *Aggregate Industries v. National Labor Relations Board*, 824 F.3d 1095, 1099 n.4 (D.C. Cir. 2016). In the footnote, the court implies there are some permissive subjects that, if one party refuses to bargain, result in maintaining the status quo.

This statement is not supported by any authority and is inconsistent with various authorities brought to our attention. For instance in *Klauder*, the court held that permissive subjects such as interest arbitration "must be a product of renewed mutual

14

consent" and expire with the parties' collective bargaining agreement. 107 Wn.2d at 344.

Because *Klauder* holds that permissive subjects of bargaining expire at the end of an

agreement, we decline to follow contrary authority.

### PERC correctly concluded both parties committed ULPs

The County has failed to convince us that public collective bargaining is a

managerial prerogative. Also, Teamsters does not contend that private collective

bargaining is a union prerogative. We, therefore, conclude that the bargaining procedure

in dispute here is not a managerial prerogative or a union prerogative. For this reason,

neither the County nor Teamsters had authority to impose its preferred procedure on the

other.

Neither party may "hold collective bargaining hostage to unilaterally imposed

preconditions to bargaining." *UPS Supply Chain Solutions, Inc.*, 366 N.L.R.B. No. 111,

slip op. at 2, 2018 WL 3032952. Here, the parties did just that. Each insisted on their

own procedure for collective bargaining. This prevented them from bargaining on

mandatory subjects. Their insistence caused an impasse over a permissive subject of

bargaining, which is a ULP.

Both the County and Teamsters argue the other enacted improper resolutions that prevented a discussion of mandatory subjects. Both argue the other is to blame. We disagree.

Neither party offered to bargain the disputed procedure in good faith. Rather, each insisted that their procedure be used. This insistence held collective bargaining hostage and resulted in an impasse over a permissive subject.

REMEDY

PERC ordered the parties to bargain in good faith to resolve to what extent collective bargaining should be public. If two attempts of good faith bargaining could not resolve the question, PERC would appoint a mediator. If mediation failed, PERC concluded that the parties would return to status quo, which it found was private collective bargaining.

The County contends PERC erred by applying the status quo doctrine to the case. It argues the doctrine does not apply to permissive subjects of bargaining, such as procedures for bargaining, only mandatory subjects. We agree.

This issue has been examined extensively by PERC itself. Before this case, PERC's decisions have consistently concluded that the status quo doctrine was inappropriate when looking at permissive subjects of bargaining. *See Int'l Ass'n of Fire*

16

*Fighters, Local 469 v. City of Yakima*, No. 7900-U-89-1699 at 10 (Wash. Pub. Emp't

Relations Comm'n Oct. 17, 1991); *Teamsters Local 117 v. Port of Seattle*, No. 24668-U-

12-6306 (Wash. Pub. Emp't Relations Comm'n Feb. 10, 2014). As the board described in

*City of Yakima*, "In practical application, one of the principal distinctions between

'mandatory' and 'permissive' subjects is that the <u>status quo</u> must be maintained on

mandatory subjects after the expiration of a collective bargaining agreement, while

obligations concerning a permissive subject expire with the contract in which they were

contained." *Fire Fighters, Local 469*, No. 7900-U-89-1699 at 10 (alteration in original).

This is consistent with our own jurisprudence. In *Kitsap County v. Kitsap County*

*Correctional Officers Guild, Inc.*, the court acknowledged that waivers were permissive

subjects of bargaining and, because of that, expire with the previous collective bargaining

agreement unless mutually agreed on. 179 Wn. App. 987, 996, 320 P.3d 70 (2014).

No. 37054-2-III
*Lincoln County v. Pub. Emp't Relations Comm'n*

We conclude status quo is not an appropriate remedy when parties are unable to agree on a permissive subject of bargaining. We remand for PERC to reconsider the appropriate remedy.[5]

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Siddoway, J.

_____

[5] The parties have not briefed whether PERC can order binding interest arbitration over a permissive subject, which is neither an employer nor a union prerogative. Even if PERC lacks such authority, the parties might still agree to resolve the dispute by binding interest arbitration in the manner described in RCW 41.56.450.

No. 37054-2-III

Korsmo, A.C.J. (concurring) – I have signed the majority opinion, but write separately to address the real problem at issue in this case. The resolution adopted by Lincoln County (County)—and a few other jurisdictions—has to be one of the most cynical political documents drafted in modern times. It takes an *exemption* to the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW, *reverses* it, and then claims to be operating under the principles of the OPMA—and does so in the labor relations arena, a sphere in which the OPMA does not apply. In addition to being irrelevant, the effort to amend the public bargaining statutes by local legislation is preempted by state law.

The OPMA requires that "meetings of the governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting of the governing body of a public agency." RCW 42.30.030. That definition includes several terms of art that are significant to explaining why the OPMA is inapplicable. A "governing body" is one, including the body's committees and commissions, that "conducts hearings, or takes testimony or public comment" for a public agency. RCW 42.30.020(2). A county or other political subdivision of the state is a "public agency." RCW 42.30.020(1)(b). A "meeting" is one at which "action" is taken.

RCW 42.30.020(4). In turn, "action" means "transaction of the official business of a public agency by a governing body," including receipt of public testimony, deliberations, and "final actions." RCW 42.30.020(3). "'Final action' means a collective positive or negative decision, or an actual vote by a majority of the members of a governing body . . . ." *Id.*

These definitions explain why the OPMA is inapplicable to labor negotiations. A meeting between private individuals (the Teamsters Local 690 (Union) and its members) and a governing body simply cannot be a "meeting *of* the governing body." The typical labor negotiation also has nothing to do with taking testimony or public comment for the public agency, meaning that the County's representatives are never acting as a "governing body" during negotiations. Exchanging proposals during bargaining does not constitute a "meeting" because it does not involve "action," even if a County artificially attempts to create a "final action" situation by sending a majority of its commissioners to take part in negotiations.[1] For all of these reasons, and probably a few others, the OPMA simply is not implicated in this case. It is an irrelevancy.[2]

---

[1] This is another aspect of the OPMA problem in this context. The County is always free to determine the makeup of its negotiating team and can manipulate its membership to place a matter within or without the OPMA. This fact demonstrates the artificial nature of the "controversy" appellant has raised.

[2] While local agencies can open more of their official business to the public than the OPMA requires, the mere act of government officials talking to private individuals does not make that interaction public business. Thus, I agree that the OPMA does not preempt the Lincoln County resolution.

2

In essence, this was a local attempt to amend state labor law by requiring that labor negotiations be conducted on the County's terms. The County had no authority to impose any conditions on negotiations. The Public Employees' Collective Bargaining Act (PECBA), chapter 41.56 RCW, was developed "to promote the continued improvement of the relationship between public employers and their employees by providing a *uniform basis*" for organizing and representation. RCW 41.56.010 (emphasis added). It should go without saying that requiring employees in some counties to bargain under local ordinances and others under state law cannot constitute "uniform" bargaining. To that end, we should recognize that the PECBA preempts the field of public bargaining.

The resolution is a local attempt to control the ground rules for negotiation in violation of state labor law. Just as the County could not pass a resolution stating that no represented employee would receive a raise from the County, it cannot condition negotiations on compliance with its chosen bargaining rules. The County's resolution is no more effectual than a resolution requiring bargaining in Times Square at midnight New Year's Eve or in Tahiti the following day.

Neither side gets to determine the ground rules for negotiations. It is considered bad faith and, therefore, an unfair labor practice for parties to bargain to an impasse over a permissive bargaining issue. *Klauder v. San Juan Deputy Sheriffs' Guild*, 107 Wn.2d 338, 342, 728 P.2d 1044 (1986). The Public Employment Relations Commission (PERC)

3

understandably treats ground rules as matters of permissive bargaining over which it has no authority to compel a resolution in accordance with RCW 41.56.160 (establishing PERC authority to enforce unfair labor practices is limited to practices prohibited by RCW 41.56.140 and RCW 41.56.150).[3] PERC should refine that practice and assume ancillary jurisdiction over "ground rules" disputes that directly relate to mandatory subjects of bargaining.[4] Otherwise, a motivated party can bog down negotiations indefinitely a la the Paris Peace Talks dispute over table configuration in 1968-69. Here, negotiations over mandatory issues have been stalled by the failure to get past the permissive, procedural hurdle thrown up by the County.

Under existing practices, PERC correctly found that both parties committed unfair labor practices by bargaining the topic to an impasse. In my view, however, the only unfair practice occurred when the County insisted on matters being done its own way or not at all. The County was the proponent of the change that led to the impasse and should be the one held responsible. While I appreciate that means the responding party normally would not have any incentive to change its opposition, the responding party already has no obligation to bargain at all over permissive issues. The only obligation

---

[3] PERC also leaves the enforcement of contract provisions, including topics of permissive bargaining, to the courts. *E.g.*, *Seattle Cmty. Coll. Fed'n of Teachers v. Cmty. Coll. Dist. 6—Seattle*, No. 16643-U-02-4345 (Wash. Pub. Emp't Relations Comm'n June 12, 2003).

[4] PERC also should decide the scope of this ancillary jurisdiction, including the ability to determine whether a ground rules impasse is actually an effort to avoid

here was to bargain over wages and working conditions, something the Union was prepared to do.

Ultimately, the legislature will need to clarify the ability of public employers or employees to insist on preconditions for bargaining. That body also is free to open negotiations to the public if desired.[5] It also should clarify PERC's authority to resolve ground rules disputes and provide for remedies.

                                        _____

                                        Korsmo, A.C.J.

---

mandatory bargaining.

[5] In my view, as well as the view of PERC and the National Labor Relations Board, it is bad public policy to invite others to attend negotiations. *E.g.*, *Pullman Police Officers' Guild v. City of Pullman*, No. 16177-U-02-4134 (Wash. Pub. Emp't Relations Comm'n May 30, 2003). However, the legislature is entitled to enact the policies it desires.